*FOR PUBLICATION*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X

In re Joyce Smith,                                   Case No. 11-37456

        Debtor.                                   Chapter 13

--------------------------------------------------------X

MEMORANDUM DECISION
REQUIRING THE PARTIES TO ENGAGE IN LOSS MITIGATION

APPEARANCES:

Edward Papa
33South Plank Road
Suite 2A
Newburgh, New York 12550
*Attorney for Debtor*

Jonathan D. Pincus
95 Allens Creek Road
Building #2
Rochester, New York 14618
*Attorney for Beneficial Homeowner Service, Corp. ("Creditor")*

CECELIA G. MORRIS
CHIEF UNITED STATES BANKRUPTCY JUDGE

      By general order dated December 18, 2008, and amended on December 29,

2010, the Court established a loss mitigation program (the "Program Procedures").[1]

---

[1] In re Adoption of Modified Loss Mitigation Program Procedures, General Order M-413 (Bankr. S.D.N.Y. Dec. 29, 2010) (amending General Order M-364), available at http://www.nysb.uscourts.gov. For a complete discussion of the history and legal basis for the Program Procedures, see Hon. Cecelia G. Morris & Mary K. Guccion, *The Loss Mitigation*

The Program Procedures create a forum for debtors and lenders to reach consensual resolution whenever a debtor's residential property is at risk of foreclosure. *See* Program Procedures, 1. A key feature of the Program Procedures is the Loss Mitigation Order, which is entered after notice and an opportunity for a hearing, and sets deadlines governing the parties' exchange of information necessary to determine whether a loan modification or other solution can be reached. *See* Program Procedures, 3-4 (stating the times frames that are set in the Loss Mitigation Order). The Program Procedures are authorized by Federal Rule of Bankruptcy Procedure 16 and the Court's inherent power to control its docket.

In the present case, a Loss Mitigation Order was entered, unopposed, after notice on the creditor. Several months after entry of this order, the Creditor advised the Court that it does not have to participate in loss mitigation with the Debtor, because the Debtor's deceased mother transferred the subject property to the Debtor before she died without permission from the creditor and therefore there is a lack of privity between the Debtor and the Creditor. The Debtor argues that the transfer is valid pursuant to the Garn-St. Germain Act of 1982. The Court rules that the transfer was valid, the mortgage is a claim in the Debtor's chapter 13 case, and the Creditor is required to participate in loss mitigation with the Debtor, in compliance with the Loss Mitigation Order entered in this case.

---

*Program Procedures for the United States Bankruptcy Court for the Southern District of New York*, 19 Am. Bankr. Inst. L. Rev. 1 (2011).

*Jurisdiction*

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the Amended Standing Order of Reference signed by Chief Judge Loretta A. Preska dated January 31, 2012. This is a "core proceeding" under 28 U.S.C. § 157(b)(2)(A) (administration of the estate), (B) (allowance of claims against the estate), and (L) (confirmation of plans).

*Background*

Debtor's mother, Nevilla Challenger, deeded the property to the Debtor by quitclaim deed on June 22, 2009, and died on October 19, 2009. The deed was recorded on March 5, 2010. At the time of the transfer, the property was encumbered by a mortgage, which was ultimately assigned to Beneficial. The transfer was without the express permission of Beneficial, and the creditor rejected some of the payments made by the Debtor, and neither returned nor endorsed a recent payment.

Debtor commenced the present bankruptcy case on August 29, 2011. In the plan filed that day, the Debtor requested loss mitigation and stated the address of the property, requesting loss mitigation in compliance with the Program Procedures. ECF No. 2; *see* Program Procedures, at 2-3 (describing process for commencement of loss mitigation by the debtor). The plan was served on Beneficial at an address in Depew, New York, and on creditor's counsel, Fein

Such & Crane. ECF No. 7. Fein Such & Crane had not appeared in the bankruptcy at that point, and appear to have represented the creditor in a foreclosure proceeding. Tammy Terrell Benoza of Fein Such & Crane appeared on behalf of HSBC as servicer for Beneficial on September 20, and withdrew the notice of appearance on October 27. ECF Nos. 8, 14.

The Loss Mitigation Order was entered on October 5, 2011, before Fein Such withdrew as counsel. ECF No. 11; *see* Program Procedures, 3 ("If the Creditor fails to object within 21 days of service of the plan the Debtor shall submit a Loss Mitigation Order and the bankruptcy court may enter the order."). The request for loss mitigation in the plan was not opposed, and the Loss Mitigation Order was not appealed. On November 2, 2011, Benoza filed a letter indicating her firm would not be representing the creditor with respect to the loss mitigation—the firm was referred the foreclosure and entered the appearance "to monitor the bankruptcy only." ECF No. 17. The present creditor's counsel, Jonathan Pincus, has never entered an appearance, but he did file an affirmation in opposition to the Debtor's brief in support of the loss mitigation. ECF No. 31.

Although the Creditor appeared by previous counsel in the bankruptcy, and did not oppose entry of the Loss Mitigation Order, the Creditor advised on the record of a status hearing on February 22, 2012, that the home was transferred in violation of a "due on sale" provision in the loan documents, and that a lack of

privity exists between the Debtor and Creditor. The Court required briefing on whether the transfer fell into one of the exceptions of the Garn St. Germain Act.

The note contains a "due on sale" provision: "If all or any part of the Property or any interest in the Property is sold or transferred without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this security instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law." Debtor argues that "applicable law" includes the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3.

The Debtor argues that the transfer is valid, despite the "due on sale" clause, and that the mortgage on the property is a claim that may be paid in a chapter 13 case. In opposition, the Creditor emphasizes that there is no privity between itself and the Debtor, and that the deed "purporting" to convey the property from mother to daughter is a "nullity" because it was submitted for recording five months after the mother died. Without any legal basis for its suggestion that the timing of the recording of the deed is relevant, the Creditor states that the Debtor is not entitled to the protections of the Garn-St. Germain Act because the deed is a "nullity," and because she has defaulted on mortgage payments and real estate taxes since September 2009. It is unclear why the Creditor believes the deed is a "nullity"—it appears that this view is related the fact that the transfer took place when the

Debtor's mother was alive and the deed was not recorded until after the Debtor's mother died.

Debtor replies, by counsel, that the conveyance is valid pursuant to the New York Real property law because it was duly executed, acknowledged and delivered prior to the mother's death; that the Debtor tried to make the mortgage payments the creditor rejected them; and the unpaid taxes are scheduled in the Debtor's plan.

*Ruling:*

The Court finds that loss mitigation should proceed. The question of whether the creditor consents to the jurisdiction of the Court is a red herring, as the home is property of the estate, and the Loss Mitigation Order was entered, unopposed and after notice to the creditor, and has not been appealed.

1. The transfer of the home from Ms. Challenger to the Debtor did not violate the "due on sale" provision, for the reasoning stated in *In re Lumpkin* and other bankruptcy courts within the Second Circuit. The facts in the matter at bar are indistinguishable from *Lumpkin* with respect to the "due on sale" provision, and the Court adopts that court's reasoning.
2. The mortgage is a claim in the Debtor's chapter 13 case, even though the Debtor does not have personal liability on the debt, in accordance with established Supreme Court precedent.

3. As the mortgage is a claim, the home is property of the estate, and the creditor failed to object to loss mitigation when it was first requested in August 2011 or appeal the Loss Mitigation Order, there is no reason why the creditor is not required to obey the Loss Mitigation Order and engage in the loss mitigation process with this Debtor.

### *"Due on sale" provision is preempted by federal law, when the transfer is to a family member*

The Garn–St. Germain Depository Institutions Act of 1982 in 12 U.S.C. § 1701j–3 provides that "due-on-sale clause" means a contract provision which authorizes a lender, at its option, to declare due and payable sums secured by the lender's security instrument if all or any part of the property, or an interest therein, securing the real property loan is sold or transferred without the lender's prior written consent. The exemptions preventing a lender from exercising the right to approve a transfer are found at 12 U.S.C. § 1701j–3(d) which states in pertinent part that "... a lender may not exercise its option pursuant to a due-on-sale clause upon— ... (6) a transfer where the spouse or children of the borrower become an owner of the property."

*In re Jordan*, 199 B.R. 68 (Bankr. S.D. Fla. 1996) (citing 12 U.S.C. §§ 1701j-3(a) and (d).

In *In re Lumpkin*, 144 B.R. 240 (Bankr. D. Conn. 1992), the bankruptcy court denied a creditor's lift-stay motion, finding that the Garn-St. Germain Depository Institutions Act pre-empted the creditor's "due on sale" provision. In *Lumpkin*, the debtor's mother quitclaimed her interest in a residence to the debtor, and the deed was recorded. The bankruptcy court "quickly disposed of" the creditor's argument that the debtor acquired the property in violation of the "due on sale" clause, noting the exception in the Garn-St. Germain Depository Institutions Act for transfers from parents to children and stating, "The debtor having acquired the residence from her mother-the borrower, there is no default to be cured." *In re Lumpkin*, 144 B.R. 240, 241 (Bankr. D. Conn. 1992) (citing 12 U.S.C. § 1701j-3(d)(6)). *See also In re Cady*, 440 B.R. 16, 20 n.9 (Bankr. N.D.N.Y. 2010) (Cangilos-Ruiz, Bankr. J.) ("Because the Cadys transferred the Property to their son and daughter-in-law, and in light of the Garn-St. Germain Act, the due-on-sale clauses contained in the aforementioned mortgages are unenforceable."); *In re Jordan*, 199 B.R. 68 (Bankr. S.D. Fla. 1996) (citing Garn St-Germain, "The Debtor, having received his ownership interest from his mother, did not need the consent of the mortgagee.").

Similarly to *Lumpkin*, in the matter at bar, it is undisputed that the Debtor acquired her ownership interest in the home from her mother, and therefore Debtor is within the exception of 12 U.S.C. § 1701j-3(d)(6). The consent of the Creditor

was not required for the transfer of Nevilla Challenger's interest in the home to the Debtor, regardless of whether the mother was alive or whether an estate had been created.

The Court rejects the Creditor's suggestion that the timing of the transfer and the recording of the deed and the attachment of tax liens has any effect on the validity of the transfer or the applicability of Garn St. Germain. The Creditor does not cite any legal authority in support of its arguments, and the Court rejects them. *Compare* Fed. R. Bankr. P. 9011(b)(2) (stating that by presenting a paper to the court, attorney certifies that the claims, defenses and legal contentions therein are warranted by existing law) *with* LBR 9013-1(a) (stating that Court may strike a motion that does not specify the rules and statutory provision upon which it is predicated). In New York, a conveyance in property is valid if the deed is executed, acknowledged, delivered and accepted. *See N.Y. Real Prop.* §§ 243, 244; *Buszozak v. Wolo*, 125 Misc. 546 (N.Y. Sup. Ct. 1925) (voiding recorded deed, "in view of the absence of an intent to pass title and of defendants' lack of knowledge of the transaction"); *Buckley v. Chevron, U.S.A., Inc.*, 149 Misc.2d 476, 479 (N.Y. Sup. Ct. 1991) ("As long as the grantor unconditionally hands over the deed and the grantee accepts it, the transfer is effective to place title in the grantee, regardless of subsequent events."). Recording is not relevant to the validity of the transfer as between the two parties. *See Buckley*, 149 Misc.2d 476, 479 (N.Y. Sup.

Ct. 1991) (distinguishing effect of failure to record on subsequent purchasers and judgment creditors). Here, it is not disputed that the deed was executed, acknowledged, delivered and accepted. Creditor, a mortgagee with an existing right to the property at the time of the disputed transfer, has not provided any authority other than the plain language of the "due on sale" provision to support its argument that the failure to record the deed until after the Ms. Challenger died has any relevance to the validity of the transfer of her interest in the home to the Debtor.

### *Mortgage is a claim in a chapter 13 bankruptcy case*

In *Johnson v. Home State Bank*, 501 U.S. 78 (1991), the United States Supreme Court ruled that where a chapter 13 debtor had discharged his personal liability on the home loan in a previous chapter 7 case, the mortgage was a claim that could be paid in the subsequent chapter 13 case. The Court noted that a mortgage is an interest in real property that secures a creditor's right to repayment, and ordinarily the creditor may pursue both foreclosure and the debtor's *in personam* liability on the debt. *Id.* at 82. The Court stated the definition of "claim" in 11 U.S.C. section 101(5) (a broad "right to payment" or "right to an equitable remedy"), and held,

> Even after the debtor's personal obligations have been extinguished, the mortgage holder still retains a 'right to payment' in the form of its

> right to the proceeds from the sale of the debtor's property. Alternatively, the creditor's surviving right to foreclose on the mortgage can be viewed as a 'right to an equitable remedy' for the debtor's default on the underlying obligation. Either way, there can be no doubt that the surviving mortgage interest corresponds to an 'enforceable obligation' of the debtor. The chapter 7 discharge extinguishes only the personal liability of the debtor.

*Johnson*, 501 U.S. at 84. *See also Lumpkin*, 144 B.R. at 241 (citing *Johnson* for the rule that even if a debtor has no personal liability on a mortgage loan, even for reasons other than a chapter 7 discharge, the in rem "claim" of a mortgagee is a "claim" subject to inclusion in a chapter 13 plan).

The Court notes that *Johnson* was a pre-BAPCPA case, and rested part of its reasoning on existing prohibitions against serial filings. The Court stated, "The absence of a [] prohibition on serial filings of Chapter 7 and Chapter 13 petitions, combined with the evident care with which Congress fashioned [other] express prohibitions, convinces us that Congress did not intend categorically to foreclose the benefit of Chapter 13 reorganization to a debtor who previously has filed for Chapter 7 relief." *Johnson*, 501 U.S. at 88. This reasoning survived BAPCPA's new section 362(c)(3) and (4), as repeat filers may have the benefit of the stay upon a showing by clear and convincing evidence that the present case was filed in

good faith. In the matter at bar, a mortgage exists against the Debtor's home, and she may treat it as a secured claim in her chapter 13 plan.

In view of the foregoing—that the Loss Mitigation Order was entered unopposed, that the transfer of the mother's interest in the home to her daughter was valid, and that the mortgage is a claim in the Debtor's case—loss mitigation shall proceed in accordance with the Program Procedures.

Debtor's counsel shall submit an order in accordance with this decision.


Dated: May 2, 2012
Poughkeepsie, New York

/s/ Cecelia G. Morris
Hon. Cecelia G. Morris
Chief United States Bankruptcy Judge